The first case today is number 25-1732, John Buccieri v. Brewster Ambulance Services, Inc. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin. May I proceed? Yes. May it please the court, Andrew Zinske for the appellant, John Buccieri. May I reserve two minutes for rebuttal? You may. Thank you. The district court set aside a jury's verdict in favor of Mr. Buccieri on a ground that no party ever raised. Brewster never argued that the verdict was inconsistent, not before the jury was discharged, not in its Rule 50A motion, not in its Rule 50B brief. Counsel, if I could move this along. We are not required to accept the district court's rationale. As I understand it, she asked for briefing on the question of sufficiency of the evidence. Her ruling does mention her view that the verdicts were inconsistent, but the defendant, Brewster Ambulance, is not arguing that. So I don't really think that that's the issue in front of us. I think the issue in front of us is the sufficiency of the evidence issue. So you can use your time any way you want, but I think it would be helpful if you could address that. Sure, Your Honor. So in terms of this sufficiency of the evidence, we believe that there is plenty of evidence in the record to show that had an interactive process had occurred, that there would be a reasonable accommodation that would be found. And to go to the record, for instance, there was discussion about a different position, a daycare position in which they would transport ambulatory seniors to various places. And the record sites for that are Appendix 660 and Appendix 448 through 451. Brewster identified this as a potential position in which it would not require him to work with people who are not ambulatory. And what evidence was there that the daycare driver position would not have raised the same issues that were raised by the position that he initially applied for? Well, the jury found that with reasonable accommodation, he could perform the duties. But there was also an undue hardship finding by the jury, correct? Right. And you can have an undue hardship situation, but still had a good faith interactive process occurred, you could still actually find a reasonable accommodation. For example, if someone asked for a ramp, someone in a wheelchair asked their employee for a ramp, but that ramp would cost $500,000. And the jury found that that would be an undue burden. But had the interactive process continued, they would have found that a $5,000 stairlift would have been... But that is not the parallel to this situation. Your client can't hear. The jury found that having a deaf driver of a wheelchair ambulance-type car would not work even with assistive devices, because there were three different types of communication that were required, dispatch with the patients and in case of emergency. The other position was not wheelchair-bound people, but also people, aged people who were in a van. Why wouldn't the same three concerns apply equally to that position? Well, if we look at what the jury found, the jury found that if you look at the verdict form and look at one, question one says, did the plaintiff, Mr. John Buccieri, prove by a preponderance of the evidence that he could have performed the essential functions of this position on or about February 24, 2019, if Brewster Ambulance made reasonable accommodations for Mr. Buccieri's disability? Answer, yes. This position, that was the wheelchair car position. Okay, so now we're talking about the alternative that you say further interactive process would have produced. Under our law, if the employer has decided that it's an undue hardship to employ them and that's a rational finding, then the interactive process ends. First Circuit was pretty clear on that. Well, the circuit does require that if they engage in the interactive process and there are accommodations that would not impose an undue hardship, that those should be considered and utilized. But by way of example, for my wheelchair example, because if a $5,000 alternative is available, but the jury found that the $500,000 ramp was an undue burden, the law doesn't excuse the employer now from saying that all other reasonable accommodations that are proposed after the undue hardship accommodation absolve them from liability. And so in this situation, there's plenty of evidence to show that the jury found that Mr. Buccieri was qualified for the position, that he could perform the essential functions, and in terms of an undue hardship or an undue burden, it says did the requested accommodation, would that have imposed an undue hardship? It didn't say would all accommodations, the requested one. Could you share your view of how the iterative process is required to work as a matter of law, what the legal minimum is? Because as I understand it, the employer learned that your client was applying and that your client was deaf, and the employer's response immediately was to put together a description of the job and send it to your client through the intermediary with a request for your client to let the employer know what accommodations he would need to be able to do the job. And he responded to that and proposed an accommodation, and the employer then decided, determined that they couldn't do that, and it would be an undue hardship among other things, and the jury agreed with that. What under the law compels the employer to have done anything more than here's the job, here's what it requires, what accommodation would you like, and then in good faith evaluate that accommodation? So in this case, the manager who interviewed Mr. Buccieri said he was highly qualified for the position and that he could do the job, in his opinion, with the accommodations that were requested. There was two weeks after... But that doesn't take you anywhere because the jury determined that it would be an undue hardship to do the accommodation your client requested. Right. So that's off the table. Correct. So they've asked for what accommodation, your client has proposed an accommodation, they've determined correctly that it would be an undue hardship. Why doesn't the process stop at that point? What legal obligation does the employer have to do anything more? So in this case, Brewster never, at any point in time, actually went to Mr. Buccieri and said, hey, we think that this may not work. Do you have any other ideas? You're saying the law requires that after you've asked for an accommodation, after you've then evaluated the one that the applicant has made, you have a duty of law to go back and ask, have you got any other accommodations? Yes, that's what the whole interactive process is about, is if one is proposed and it doesn't work, there has to be a conversation that happens. An employer can't stay silent the whole time and say, oh, that doesn't work. We're rejecting you and we're not giving you a reason or giving you an opportunity to have a good faith dialogue in which we can find out if there are reasonable accommodations that are available and that could be used so that you could perform the job. And that's what didn't happen here. And that's what the circuit court requires in this case to ensure that an interactive process does occur. And that's what the law requires. Thank you, counsel. Thank you. At this time, would counsel for the appellee please introduce herself on the record to begin? May it please the court, Sarah Hurley for Brewster Ambulance Service. Should I take from Judge Lynch's comments that you would like me to focus on the same issues as my brother counsel focused on? You can proceed as you prefer. Okay. Again, based on the comment from Judge Lynch, I do think that the court's focus on whether there is sufficient evidence to support the interactive process verdict here is the correct one. And I would agree with the comments I've heard from the court that the ruling that there was an undue burden on the accommodations that were discussed and are well documented in the record really is a bit of a dispositive decision here. There was extensive testimony from Mark Brewster, who is the owner of the company, worked as a chair car driver for four years, has been in the family business for, I believe, over 90 collectively with his brother and his father, and who spoke with his brother and his father about these accommodations. And the feedback from that was what you would hope an employer would do, not just a minimum, to Judge Kayada's point, but exactly what you hope an employer would do. He applied. He identified himself as deaf. They reached out and said, here's the job description. Anything we can do to accommodate both the interview and you having this job. There are emails back and forth that say, it would be great to have a deaf person in this job. Like, we want to employ disabled people. They had a deaf employee at the time. They took him on an initial interview, seemed to go pretty well with the communication systems. Then he went on a chair car ride along, and it didn't go well. There were the concerns that Judge Lynch has identified about the ability to communicate with the vulnerable people being transported in the back of the ambulance. These people often are elderly. They're coming from skilled nursing facilities. Having just checked my father into one, I'm sensitive to that. You want them to be able to talk to the person in the back. If they can't do that effectively, if they can't do that without taking their eyes off the road, without distracting to dial, then it's a concern. But the client didn't stop there. They went further. They said, you know, is there another job that would fit? Is there something in finance that maybe we could work out? Is there another chair car driver position where the people in the back aren't so vulnerable? They looked into that. And then you see in Exhibit 13, which is at 664 in the record, Your Honors, you see the follow-on email that the human resources person put together, where he said, you know, look, we've decided not to offer you the job, but here's what we've considered. This, this, and this. We've considered another system. They told him about considering alternate jobs. They outlined the concerns with his ability to communicate in the back and ended the communication by saying, look, give us a call if you want to talk about any of this. I don't know what more an employer is supposed to do to try to accommodate an applicant for a job. There was also importantly. Is it your position that the same undue hardship applies to the daycare driver position as would have applied to the position that he initially sought? It does, Your Honor. And there is an exhibit in the record where that question is raised exactly and specifically answered. They called the person who was in charge of the daycare chair car division and said, hey, look, can we put him here? And that person responded saying, you need to have the same communication with the daycare people because those are people who are in, you know, daycare programs where they're being transported by a wheelchair chair car. These are also somewhat vulnerable people. Now, I know my brother may come back and respond to say, well, there were things that could have been done. You know, he offered to do gestures and nods. You heard testimony from Mark Brewster that the number one cause of accidents at Brewster Ambulance Service, and they have a lot of them, trust me, is distracted driving. People on their cell phones, they track these things now. This business, by the way, the chair car business, it's in the record, it makes them zero money. They lose money on this business. It is, whether you call it a loss leader, a community service, it's what they need to provide to get the ambulance contracts with the communities, right? So they make no money on this service as a standalone service. So they can't put another person, pay to put another person on that chair car. So there was very clear testimony. And again, the notion— Does distracted driving go to the tablet issue as well that was raised by Mr. Buccieri, that they could have provided some sort of tablet to assist? It does, Your Honor, because a tablet you have to interact with. I mean, we're all on our phones. You can't walk down the streets in Boston without hitting somebody in their phone distracted by it. The one solution, the way that they do communicate to avoid distractions, very clearly identified in the record, is the radio. One button, you pick it up, you don't dial anything, instantly to dispatch. That system, Mr. Brewster testified, never goes down. It's not like a cell phone, which you may lose a signal. The radio dispatch system is tried and true, and that's why nearly every dispatch service in the U.S. still uses it. Because, again, you pick it up, you hold a button, you don't have to take your eyes off the road. So, again, the notion that there was some other accommodation out there, it simply isn't in the record, and the jury was instructed to, and properly instructed not to speculate about what other accommodations could be out there. This is not a case where an employee was left, you know, or there was an attempt to gin up what looks like a good, reasonable accommodation interaction or interactive process. There was an actual, genuine, documented effort to do that here. And I believe the judge was correct in saying that there was not enough evidence to sustain that verdict. And, again, we did specifically object to the wording of Question 6 on the jury verdict form, which essentially presumed that that process hadn't happened. Have you appealed on that issue? We preserved that issue, and, Your Honor, we're not the appellant, obviously, and we are in an odd procedural posture where we, down below, I was limited to five pages. No judgment had entered. My 50B obligation had not kicked in yet because we're bifurcated as to liability and damages. So the judge said, hey, five, from my side, it was five double-spaced pages on your theory. By the time you do the facts in that, I have, like, two paragraphs of argument because the facts are very important in that argument. So we do think that, I mean, I'm not the appellant here, but we did raise that issue in our papers that there is insufficiency to this judgment, and that was the argument in our 50B motion down below. Again, kind of a quasi-50B motion. I certainly would have done a more fulsome motion had I had more than five pages. So how do you view the interactive process? Did your client have any duty to communicate back its decision and its reasons for its decision before it declined, it turned down his application? I don't think that the case law requires that necessarily, Your Honor. It requires them to have fulsome discussions, and they did that. There wasn't just one discussion. There wasn't just two discussions. There were numerous discussions, numerous interviews with him. They never, as I understand it, before turning him down, they never told him what the impediments were that caused them to conclude that his requested accommodation would not work. Rather, they told him simultaneously with turning down his application. I don't know, and I'm going to have a hard time pointing exactly in the exhibit as to where that is. I don't know that it's entirely accurate that he did not receive some communication as to what he needed to do and where there were concerns in terms of being able to communicate properly while driving. I know there was evidence in the record of Mr. Buccieri interviewing at another chair car company because he sued three chair car companies for the same reason. He interviewed at another chair car company, and there was evidence in the record that while he was backing up in that test drive, he actually crashed into some trees because he couldn't hear the person saying stop, stop, stop. So I think he knew. I mean, again, I think that is evidence that he knew that there were limitations with his ability to safely operate and communicate. But, Your Honor, even if we did not communicate to him before the decision, we communicated clearly in a multi-page document what the reasonings were and invited further conversation. So had he come back to us and said, hey, look, I have a program that's going to fund an ASL sign language interpreter as part of my job, I don't want to speculate, but had he come back to that, my clients didn't indicate that they weren't open to further discussion. They were. They had made the decision based on numerous interactions and based on a good faith effort and listening to him, researching what he told them, giving him a test drive, two interviews. And again, they left the door open. I have nothing further unless you have questions. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself on the record? He has a two-minute rebuttal. Yes, Your Honor. This is Andrew Rosinski for the Appellant. The jury took the evidence very carefully in this case. Mr. Buccieri is an EMT. He is a firefighter. He's an extraordinary individual, and he proved to the jury that he was qualified for this position, that he could do this position. And if you look at the verdict form, they not only said that he could perform the essential functions, that he was qualified, that he could do this job. And just because they found that the requested accommodation, a VRS and a cup holder, and a VRS is a device on a cell phone where you could use to make phone calls to other individuals through a sign language interpreter, and a cup holder was an undue hardship or direct threat, they found that those accommodations would not work. But there are other accommodations, such as an interpreter writing notes back and forth, interacting. Mr. Buccieri… The accommodation would be to hire another interpreter who would ride in the car? Well, not saying that that had to be the accommodation, but that could… You suggested that that was a viable one. It could have been, but that was not what was discussed at trial. What was discussed at trial was utilizing gestures, utilizing your mirrors, writing notes back and forth, utilizing other accommodations in ways that he had communicated in other sorts of positions. Writing notes back and forth with the passengers while he's driving? No, so in the testimony… What's your best other accommodation that would have made it possible for him to do the job without an undue hardship? Okay, so there was testimony that there was no need to communicate while you were transferring the drivers, and that one of the most experienced chair car drivers said, in over 20,000 trips, he's only had two incidences. One where somebody unbuckled themselves during the trip, which wouldn't be an issue anymore because they had different seatbelts. And another one where they were acting, you know, distressed, but we weren't having a medical emergency, it was just angry. And they were able to pull over and calm them down. So this job does not involve continuous interaction while transporting an individual, and that's not an essential function of this job, and it was not considered by the jury as being essential. So continuous communication… Thank you. Do you have more? I did want to know what you had to say about the argument that question number six presumed that there was no good-faith interactive process and was objected to on those grounds. So there… Question six says, did the plaintiff prove, had a good-faith interactive process occurred, Mr. Buccieri and Bruce Dremlins could have found reasonable accommodations that would have enabled Mr. Buccieri to perform the job's essential functions? And he said yes to that. It seems to presume that a good-faith interactive process did not occur, which… It did not occur because there was… He was told… No, no, no, counsel. It presumed that, correct? Who proposed that question, which strikes me as being plainly improper? Did you propose that question? I know your opponent objected to it. I think that the parties agreed to this question. No, the parties did not agree. We can look at the record. Yes, I think the record will speak for itself. You can't, you're not expected to remember everything. Yes, I think once the, you know, I think the record will speak for itself as to that particular issue, but… Thank you, counsel. All right, thank you. Thank you, counsel. That concludes argument in this case. Thank you.